148

MULLINS, APPELLEE, *v.* THE PRUDENTIAL INS. CO. OF AMERICA, APPELLANT.

(No. 39656—Decided May 11, 1966.)

*Mr. Frank Leonetti,* for appellee.

*Messrs. Arter, Hadden, Wykoff & Van Duzer* and *Mr. William W. Taft,* for appellant.

*Per Curiam.* One of the issues raised by the defendant is that at the time of his death Mullins was not an employee as required under the terms of the policy. The group life insurance policy termination clause reads as follows:

"Irrespective of any other mode of termination the insurance upon the life of any person insured hereunder shall automatically cease and determine upon termination of the employment of such person with the employer, except that, at the option of the employer employees temporarily laid off, on leave of absence or temporarily disabled shall during such periods be considered as being in the employ of the employer."

The record discloses that Mullins had been employed by the Thompson Ramo Wooldridge, Inc., for some time previous to the 14th day of November 1959, when he was temporarily laid off because of work reduction. The records of the company introduced in evidence show that starting on Monday, November 16, the company records show him as "L. O.," which the company representative, who described himself as Administrator of Employee Benefits, testified meant "Laid Off."

This same representative testified further as follows:

"Q. Then, when Mullins was reported deceased and the claim was made under the insurance policy in question here, both the life and accident, the matter came within your jurisdiction? A. Yes, sir.

"Q. And it was necessary under the provisions of the life policy to determine whether or not Mr. Mullins was an employee because he had been laid off? A. Under my—

"Q. No, I am talking about the company. It was the company's obligation then to make a decision as to whether Mullins was to be considered an employee for insurance purposes? A. Right, yes.

"Q. What was the company's decision? A. My original decision was that he was not. His employment ceased as of the 14th and the thirty-one days had expired at the time of his death.

150

"Q. I didn't ask you what your original decision was. What was the company's decision? A. The company's decision was to pay the life insurance.

"Q. In other words, that Mullins was considered an employee for the life insurance, is that correct? A. Yes, sir."

It is stated in 68 A. L. R. 2d 36:

"Since the term 'employment' is construed as referring to a status rather than to a contractual relationship, the phrase 'termination of employment' must necessarily mean a clear and complete severance of the relationship of employer and employee, or, in other words, the end of the status * * *."

Further in the same authority, at page 54, the following statement is made:

"A 'layoff' amounts to a termination of employment within the meaning of such a clause in a group policy where such layoff is intended as a permanent dissolution of the employer-employee relationship, while where a layoff is considered as a mere temporary interruption from work, with an intention of continuing such relationship, it does not constitute a termination of employment within the meaning of such a clause."

It is clear from the company records introduced in evidence and from the action and decision made by the company as to payment of the proceeds of the life insurance policies that Mullins at the time of his death on December 16, 1959, was an employee temporarily laid off because of a shortage of work, and, under the terms of his employment under the union contract, was subject to recall at any time within two years, and that upon such recall his same clock number, seniority rights, etc., would be restored to him. Upon these facts the trial court determined that upon the date of his death Mullins was an employee of the company within the terms of the policies and so instructed the jury. In this the trial court was correct as there was no evidence to the contrary and reasonable minds could arrive at no other conclusion.

The remaining question was whether the deceased met his death, "directly and independently of all other causes, from accidental bodily injury" under the terms of the policy involved in the first cause of action, and whether his death also resulted, "directly and independently of all other causes, of

bodily injury effected solely through external, violent and accidental means," under the policy involved in the second cause of action.

The record discloses that on the evening of December 15, 1959, Mullins was a patron of Coke's Tavern, which was a neighborhood tavern near Mullins' home where he was a regular patron and was acquainted with the bartender and most of the other patrons present on that evening. Mullins did not care for the music being played in the juke box which he tipped up causing the records to stop playing. Two patrons threw beer bottles at him, one of which struck him on the head and knocked him to the floor. He then pulled a knife from his pocket and made some threats against the other patrons. The bartender came from behind the bar and attempted to quite Mullins and get him to leave. The bartender attempted to take the knife from Mullins' hand and received a cut on one of his fingers, and, upon seeing that the bartender had been cut, one of the patrons went over the bar, picked up a 22-caliber revolver from beside the cash register, came back over the bar and fired three shots at Mullins, one of which killed him instantly. In falling Mullins again accidentally cut the bartender across the abdomen.

Under the facts of this case a question was thus presented for determination by the jury.

The court instructed the jury as follows:

"If you find that Grover Mullins voluntarily entered upon a course of conduct resulting in his death, and that bodily injury and death was reasonably foreseeable from that course of conduct, and that as the aggressor he was killed as a result of that course of conduct, his death cannot be regarded as accidental, and you should return a verdict for the defendant on the first cause of action.

"On the other hand if you find that Grover Mullins was not the aggressor, or if he was the aggressor he could not have reasonably anticipated bodily injury resulting in death to himself at the hands of another, his death can be regarded as accidental, and you should return a verdict for the plaintiff on the first cause of action in the amount of $5,000 plus interest.

"If you find that Grover Mullins voluntarily and culpably provoked the altercation with the patrons in the tavern and

152

that under the circumstances he reasonably should have anticipated that his aggression would be met with resistance putting him in danger of great bodily harm, his death is the natural consequence of his voluntary conduct and is not sustained by accidental means, and then you should return a verdict for the defendant on the second cause of action.

"If you find that Grover Mullins was not the aggressor, or he was the aggressor he could not have reasonably anticipated the kind and degree of resistance or opposition by the patrons to be expected as a natural consequence of his actions, his death resulting from an unforeseen and unexpected act beyond his anticipation is by accidental means and you should return a verdict for the plaintiff on the second cause of action in the amount of $7,500 plus interest."

We find no error prejudicial to the defendant, and, there being sufficient evidence to support the finding of the jury, the judgment of the Court of Appeals affirming the judgment of the Common Pleas Court is affirmed.

*Judgment affirmed.*

ZIMMERMAN, acting C. J., YOUNGER, MATTHIAS, O'NEILL, HERBERT, SCHNEIDER and BROWN, JJ., concur.

ZIMMERMAN, J., sitting for TAFT, C. J.

YOUNGER, J., of the Third Appellate District, sitting for ZIMMERMAN, J.