943 F.2d 51
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Juanita BELCHER, Plaintiff-Appellee,
v.
METROPOLITAN LIFE INSURANCE COMPANY, Defendant-Appellant.
 No. 91-3056.
 United States Court of Appeals, Sixth Circuit.
 Aug. 23, 1991.
 
 Before DAVID A. NELSON and SUHRHEINRICH, Circuit Judges, and HARVEY, Senior District Judge.*
 PER CURIAM.
 
 
 1
 This is an appeal from a grant of summary judgment to the plaintiff in an action on a group life insurance policy issued by the defendant to the United States Government pursuant to the Federal Employees' Group Life Insurance Act. The policy provided for the payment of accidental death benefits over and above the basic life insurance proceeds in case of death by "accidental means." The plaintiff attempted to collect these additional benefits after her son died from a drug overdose. The defendant declined to pay, arguing that the death was not the result of accidental means. On cross-motions for summary judgment, the district court concluded that the policy was ambiguous and that under Ohio choice-of-law rules it should be construed in accordance with the substantive law of New York. That state having abolished the distinction between "death by accidental means" and "accidental death," the district court held that the plaintiff was entitled to recover the additional benefits. Because we find no ambiguity in the terms of the policy, and because we conclude that the district court should not have applied the substantive law of New York, we shall reverse the judgment. The record as it now stands is unclear as to whether the means of the insured's death was in fact accidental, and we shall therefore remand the case to the district court for further factfinding.
 
 
 2
 * David Belcher, a mail inspector employed in Ohio by the United States Postal Service, died in 1986 from a self-administered overdose of propoxyphene, also known as Darvon, and diazepam, commonly known as Valium. At the time of his death Mr. Belcher was covered by a group life insurance policy issued by the defendant, Metropolitan Life Insurance Company, pursuant to the Federal Employees' Group Life Insurance Act, 5 U.S.C. §§ 8701-8716.
 
 
 3
 In February of 1987 Mr. Belcher's mother, plaintiff Juanita Belcher, filed a "claim for death benefits" form with the Office of Federal Employees' Group Life Insurance ("OFEGLI"), the Met Life office that administers the group life insurance program. Because several parts of the form had been left blank, OFEGLI sent Mrs. Belcher a letter requesting her social security number and informing her that she might be eligible for additional benefits if her son's death had occurred by "accidental means" as that term was used in the policy. The letter invited her to submit documentation regarding the accidental death claim.
 
 
 4
 After receiving Mrs. Belcher's social security number, OFEGLI notified her that it was forwarding payment of the basic life insurance proceeds--$66,000 plus interest--but that the question of accidental death benefits (an additional $25,000) was still pending. Mrs. Belcher then submitted a copy of the coroner's verdict, which stated that her son's death was the result of a "self-administered overdose of drugs and was probably accidental in nature." After reviewing the report, Met Life informed the plaintiff that she was not eligible for the accidental death benefits because the means of her son's death--in the company's words, a "voluntary and intentional ingestion of ... dangerous drug[s]"--was not accidental.
 
 
 5
 After an exchange of correspondence, Mrs. Belcher filed a complaint against Met Life in the Court of Common Pleas of Cuyahoga County, Ohio. The complaint alleged that the defendant's refusal to pay the additional benefits constituted negligence and a bad faith breach of the insurance contract. The pleading concluded with a prayer for compensatory damages of $25,000 and punitive damages of $50,000, plus attorney fees, interest, and costs.
 
 
 6
 The defendant removed the case to the United States District Court for the Northern District of Ohio on the basis of diversity of citizenship. See 28 U.S.C. §§ 1332 and 1441. The parties then filed cross-motions for summary judgment. Mrs. Belcher argued that the accidental death portions of the insurance policy were ambiguous on their face; that the term "accidental means" should therefore be construed in accordance with state law; that Ohio's choice-of-law rules required the application of the substantive law of New York; and that New York law had defined "accidental means" to include an unintended death produced by an intentional action. Met Life, on the other hand, maintained that the term "accidental means" unambiguously excluded a self-administered overdose; that even if the policy was ambiguous it should be interpreted in accordance with federal law; that a letter issued by the Office of Personnel Management (the federal agency that oversees the group life insurance program) constituted an agency interpretation precluding the payment of additional benefits when death results from self-administered drugs; that even if the policy was governed by state rather than federal law, Ohio's choice-of-law rules required the application of the substantive law of Ohio or the District of Columbia; and that both Ohio and the District of Columbia had preserved the distinction between "accidental means" and "accidental death," only the former term being applicable here.
 
 
 7
 The district court agreed with the plaintiff. Concluding that the policy was ambiguous on its face, and applying the substantive law of New York, the court held that Mrs. Belcher was entitled to recover compensatory damages in the amount of $25,000 plus interest.[1] Met Life then filed a timely notice of appeal.
 
 II
 
 8
 * The interpretation of a contract must begin, of course, with the language of the contract itself. Tennessee Valley Authority v. Exxon Nuclear Co., Inc., 753 F.2d 493, 496 (6th Cir.1985). The insurance policy at issue in the case at bar provided, in pertinent part, as follows:
 
 
 9
 "Section 5. INSURING CLAUSES ...
 
 
 10
 (B) Insurance for Death or Dismemberment by Accidental Means:--Upon receipt by the Office of notice and satisfactory proof, as required herein, that any Employee, while insured hereunder for Insurance for Death or Dismemberment by Accidental Means, shall have sustained bodily injuries solely through violent, external and accidental means, and within ninety days thereafter shall have suffered any of the losses specified in the Schedule of Losses [e.g., death] ... the Office shall pay ... the amount of insurance specified for such loss...." (Emphasis supplied.)
 
 
 11
 Unlike the district court, we find the term "accidental means" to be "clear and plain, something only a lawyer's ingenuity could make ambiguous.' " United States Fidelity and Guaranty Co. v. Star Fire Coals, Inc., 856 F.2d 31, 34 (6th Cir.1988), quoting American Motorists Insurance Co. v. General Host Corp., 667 F.Supp. 1423, 1429 (D.Kan.1987). "Accidental," as used in this context, means "happening or ensuing without design, intent, or obvious motivation, or through inattention or carelessness." Webster's New International Dictionary 11 (3d ed. 1981). "Means"--the noun modified by the adjective "accidental"--denotes a thing "employed in performing or executing some end." Id. at 1398. As used in the policy, therefore, the term "accidental means" requires more than an unintended result; the means by which the result occurred must also have been accidental. See, for example, Star Fire Coals, 856 F.2d at 34; R. Anderson, 10 Couch on Insurance (2d) § 41:29 (1982 & Supp.1990).
 
 
 12
 Contrary to the arguments advanced by the plaintiff, this reading of the policy is not affected by the possibility that similar language might be construed differently under state law (the law of New York, e.g.). 5 U.S.C. § 8709(d)(1) provides that the terms of any federal employees' group life insurance policy that "relate to the nature or extent of coverage or benefits (including payments with respect to benefits) shall supersede and preempt any law of any State ... or any regulation issued thereunder ... to the extent that the law or regulation is inconsistent with the contractual provisions."
 
 B
 
 13
 Even if the policy were ambiguous, and assuming arguendo that the ambiguity should have been resolved according to state rather than federal law, it would still have been error to apply the substantive law of New York.
 
 
 14
 In choice-of-law matters involving contract validity and interpretation, Ohio follows the approach taken by the Restatement (2d) of Conflict of Laws. See, for example, Sekeres v. Arbaugh, 31 Ohio St.3d 24, 508 N.E.2d 941, 942 (1987) (applying Restatement § 187); Gries Sports Enterprises, Inc. v. Modell, 15 Ohio St.3d 284, 473 N.E.2d 807, 808 (1984) (applying Restatement § 188), cert. denied, 473 U.S. 906 (1985). Section 192 of the Restatement, which focuses on life insurance contracts, teaches that "[i]n the case of group life insurance, rights against the insurer are usually governed by ... [the law of] the state where the employer has his principal place of business." Restatement (2d) Conflict of Laws § 192, comment h (1971). Depending on how broadly one defines Mr. Belcher's employer, its principal place of business is either Ohio or the District of Columbia--both of which jurisdictions distinguish between an accidental death and a death by accidental means. See Smith v. Continental Casualty Co., 203 A.2d 168, 169-170 (D.C.1964); Mullins v. Prudential Insurance Co., 6 Ohio St.2d 148, 216 N.E.2d 619, 621 (1966); Hassay v. Metropolitan Life Insurance Co., 140 Ohio St. 266, 43 N.E.2d 229, 231 (1942).
 
 C
 
 15
 Having concluded that Met Life is required to pay accidental death benefits under the FEGLIA policy only where the means of death is accidental, we turn to the question whether either party in this case is entitled to summary judgment. Such a judgment is appropriate only where the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), Fed.R.Civ.P.
 
 
 16
 On the record before us, we cannot say that either party is entitled to summary judgment. The district court made no factual findings regarding the nature or cause of the drug overdose, and the record is far from unequivocal on this point. The evidence presented to the district court indicates that the insured was a known drug user and that drug paraphernalia were found in his apartment. The evidence also indicates, however, that Mr. Belcher had been injured in a motor vehicle accident approximately one week before his death and that his treating physician had prescribed several painkillers. Nothing in the record indicates whether the drugs ingested were obtained by prescription or by illegal means--and, if by prescription, whether Mr. Belcher was instructed to take them in the amount and manner that resulted in his death. Accordingly, we conclude that the case should be remanded for a determination of the precise manner in which the plaintiff's son died.
 
 
 17
 The judgment of the district court is REVERSED and the case is REMANDED for further proceedings not inconsistent with this opinion.
 
 
 
 *
 The Honorable James Harvey, Senior United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 The claims for punitive damages and attorney fees were not granted and have not been pressed on appeal