**Eliezer GURFEL, Petitioner,**

v.

**SECURITIES AND EXCHANGE
COMMISSION, Respondent.**

**No. 99–1199.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Feb. 7, 2000.

Decided March 7, 2000.

David W. O'Brien argued the cause and
filed the brief for petitioner.

Mark Pennington, Assistant General
Counsel, Securities and Exchange Com-
mission, argued the cause for respondent.
With him on the brief were David M.
Becker, Deputy General Counsel, Jacob H.
Stillman, Solicitor, and Susan K. Straus,
Attorney.

Before: SILBERMAN, HENDERSON,
and RANDOLPH, Circuit Judges.

Opinion for the Court filed by Circuit
Judge SILBERMAN.

SILBERMAN, Circuit Judge:

Petitioner challenges an NASD order,
affirmed by the SEC, barring him from
the securities business. He asserts that
under its bylaws the NASD had lost au-
thority to adjudicate his conduct. We
deny the petition.

**I.**

The National Association of Securities
Dealers (NASD) is an association of bro-
ker-dealers authorized under the Securi-
ties Exchange Act to develop and enforce
rules of professional conduct for its mem-
ber firms, subject to oversight by the SEC.
*See* 15 U.S.C. § 78*o*–3. At the time of the
misconduct that gave rise to this case,
Eliezer Gurfel was employed by NASD
member firm International Money Man-
agement Group, Inc. (the firm). Under
the terms of his employment with the firm,
Gurfel sold securities products to investors
and split the commissions—Gurfel receiv-
ing 85% of the commissions and the firm
15%. On four occasions between January
and March of 1993, Gurfel received com-
mission checks from ITT Hartford for his
sale of the insurance company's variable
annuities. Although the checks were
made out to the firm, Gurfel deposited
them in his personal bank account, evi-
dently by forging the endorsement of the
firm's president, Chip Brittingham, on the
back of the checks.[1]  Gurfel did not send

---

1. Gurfel protested before the NASD and SEC
that he did not forge Brittingham's name on
the checks; while he acknowledged that he
"mistakenly" deposited the checks in his per-
sonal account, he professed ignorance as to
how Brittingham's name came to be on the

back of them. Since Gurfel does not contest
the SEC's factual findings, we accept the
agency's determination that Gurfel "forged or
caused to be forged" Brittingham's name on
the checks.

the firm its 15% share of the commissions.

The firm discovered that the Hartford checks were missing. According to unchallenged testimony during NASD enforcement proceedings, Brittingham confronted Gurfel about the missing commissions, and Gurfel then admitted that he had forged Brittingham's name on the checks. Gurfel reimbursed the firm for the funds he had converted, and "resigned" from the firm. As is required by NASD Bylaws, Art. IV, § 3(a) (1996),[2] the firm notified the NASD that Gurfel's association with the firm had been terminated. The notice of termination was sent on November 15, 1993. The notice indicated that Gurfel had violated his agreement with the firm by depositing the checks into his personal account, but made no reference to the forgeries. One week after his termination, Gurfel began work at another NASD member firm, Van Sant and Mewshaw Securities, Inc. (Van Sant). His employment there ended about a year later, on October 31, 1994.

On November 30, 1995, the NASD's Business Conduct Committee filed a complaint against Gurfel alleging that he forged or caused to be forged the Hartford checks and converted the proceeds for his personal use. While Gurfel did claim innocence of the forgery charge, his more vigorous defense was procedural. Article IV, Section 4 of the NASD Bylaws, entitled "Retention of Jurisdiction," states that:

> A person whose association with a member has been terminated *and is no longer associated with any member* of the [NASD] ... shall continue to be subject to the filing of a complaint ... based upon conduct which commenced prior to the termination ... but any such complaint shall be filed within:
> (a) two (2) years after the *effective date of termination of registration* .... (emphasis added).

Gurfel argued that since no complaint was filed within two years of the date of his termination with the firm—where he committed the misconduct—this provision deprived the NASD of authority to file its complaint. The NASD responded that the two-year period set forth in section 4 began running not when Gurfel left the firm, but when he was terminated from Van Sant, at which point he left the industry. Since the NASD filed its action less than two years after that later date, the complaint was timely. The NASD's National Adjudicatory Council rejected Gurfel's argument and barred Gurfel from future association with any NASD member firm. The SEC sustained both the NASD's interpretation of section 4 and the sanction. *In re Gurfel,* Exchange Act Release No. 41,229 (SEC Decision March 30, 1999). In his petition Gurfel contests only the NASD's authority to bring the enforcement action against him.

## II.

His argument essentially is that section 4 must be read as if it were analogous to a statute of limitations. The phrase "effective date of termination of registration"—which starts the running of the two-year period—therefore refers to his initial termination from the firm rather than his subsequent termination from Van Sant. That is so, it is claimed, because the misconduct with which he is charged took place at the firm from which he was initially terminated.

The obvious difficulty with petitioner's argument is that section 4 does not start the running of the two-year period of extended NASD authority from the date of any misconduct, but rather from the date of termination. And termination could occur for a host of reasons, including voluntary resignation having nothing to do with the person's conduct. Therefore in determining which termination begins the two-

---

**2.** Article IV has since been redesignated as Article V without substantive change. In this opinion we refer to the bylaws in effect at the

time the NASD's complaint against Gurfel was filed.

year period—the first or second—the place at which the misconduct occurred appears irrelevant.

Petitioner attempts to tie the jurisdictional period to the termination from the broker-dealer at which the misconduct took place by referring to language later in section 4. A member firm is required to amend its notice of termination in the event that "the member learns of facts or circumstances causing any information set forth in said notice to become inaccurate or incomplete." *See* NASD By-Laws, Art. IV, § 3(b). Section 4(a) addresses the effect of the filing of such a post-termination amendment on the NASD's jurisdiction, stating that an NASD complaint must be filed within

> two (2) years after the effective date of termination of registration pursuant to Section 3 above, provided, however, that any amendment to a notice of termination filed pursuant to Section 3(b) that is filed within two years of the original notice *which discloses that such person may have engaged in conduct actionable* under any applicable statute, rule, or regulation shall operate to recommence the running of the two-year period under this paragraph.

NASD Bylaws, Art. IV, § 4(a) (emphasis added). Gurfel reads the "which" clause as referring to the original notice, not the amendment, and that is supposed to suggest that it is necessarily a person's misconduct-related termination that triggers the jurisdictional period. We think that reading is plainly wrong because as petitioner concedes there is no necessary connection between a termination and misconduct that took place prior to the termination. It is obvious then that it is the amendment that is modified by the "which" clause.

Although the language of section 4 might not pass SEC scrutiny as an offering circular, we think the agency's reading is correct. The "termination" which be-

gins the running of the two-year period, after which the NASD loses jurisdiction, is the termination from a person's last job in the industry. After all the section is entitled in jurisdictional terms. Its apparent purpose is to extend coverage to any registered representative who worked in the industry for *any* member firm for two years after that person leaves the industry. That is why the section does not even apply to a person who is presently "associated with any member of the [NASD]." In other words, as petitioner concedes, a person who remains with one firm (never terminated) is subject to the NASD's jurisdiction indefinitely. It is also clear that a person who leaves firm A to work for B and continues working at B for, let us say, 40 years remains subject to NASD jurisdiction for misconduct committed at firm A—as he is still "associated with" an NASD member. These examples show that section 4's limitation on the NASD's authority to impose discipline on a registered representative is not focused on—indeed, it is indifferent to—the period of time running from the representative's misconduct. In sum, this provision merely restricts the NASD's authority to discipline registered representatives to a period necessary to protect the industry, not for the purpose of granting a possible wrongdoer repose.

The SEC argues that it is entitled to deference as to the proper interpretation of the NASD rules[3] because the Commission must approve and may on its own initiative modify the NASD Bylaws, *see* 15 U.S.C. § 78s(b)-(c). We think that deference would be appropriate if we were in doubt as to the proper interpretation of section 4, *see Arkansas v. Oklahoma,* 503 U.S. 91, 110-11, 112 S.Ct. 1046, 117 L.Ed.2d 239 (1992) (deferring to EPA's interpretation of state environmental regulatory standards the agency incorporated by reference), but we are not.

---

**3.** That would raise an interesting question if we were faced with divergent interpretations from the NASD and the SEC.

\* \* \* \*

For the reasons set forth above, we agree with the SEC's interpretation of section 4, and deny Gurfel's petition.

*So ordered.*