OPINION
{¶ 1} Plaintiff-appellant, Bradley Jacobs ("Jacobs"), appeals from the judgment of the Franklin County Court of Common Pleas granting summary judgment in favor of defendant-appellee, Western Southern Life Insurance Company ("Western Southern"). For the following reasons, we affirm.
 {¶ 2} The facts of this case are rather simple and generally undisputed. Jacobs began working for Western Southern in 1996, when he was hired for the position of a *Page 2 
sales representative. Two years later, Jacobs was promoted to sales manager, and, in 2002, he was promoted to district sales manager. In that position, Jacobs was responsible for managing Western Southern's north Columbus office, and his direct supervisor was Gene Patterson ("Patterson"). As germane to this appeal, it suffices to say that a less than harmonious relationship developed between Jacobs and Patterson, and, from Jacobs's perspective, his continued employment with Western Southern was rendered infeasible. In an email sent on March 22, 2006, Jacobs resigned effective April 7, 2006.
 {¶ 3} Various written employment contracts were in place during Jacobs's tenure of employment. Each agreement, including the one in effect at the time of Jacobs' resignation, contained the following provision:
 Section III. Legal Proceedings
 You agree:
 * * *
 c. Not to commence any action or suit relating to your employment with Western-Southern more than six months after the date of termination of such employment, and to waive any statute of limitation to the contrary.
 {¶ 4} On April 10, 2007, Jacobs filed the instant action. Western Southern moved for summary judgment, inter alia, on the basis that Jacobs filed suit outside the six-month limitation provision, and, therefore, his suit was time barred. The trial court agreed, and granted Western Southern's motion.
 {¶ 5} This appeal followed, and Jacobs brings the following single assignment of error for our review: *Page 3 
 THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT GRANTED DEFENDANT'S MOTION FOR SUMMARY JUDGMENT.
 {¶ 6} This matter was decided in the trial court by summary judgment, which under Civ. R. 56(C) may be granted only when there remains no genuine issue of material fact, the moving party is entitled to judgment as a matter of law, and reasonable minds can come to but one conclusion, that conclusion being adverse to the party opposing the motion.Tokles Son, Inc. v. Midwestern Indemn. Co. (1992), 65 Ohio St.3d 621,629, citing Harless v. Willis Day Warehousing Co. (1978),54 Ohio St.2d 64. Additionally, a moving party cannot discharge its burden under Civ. R. 56 simply by making conclusory assertions that the nonmoving party has no evidence to prove its case. Dresher v. Burt (1996),75 Ohio St.3d 280, 293. Rather, the moving party must point to some evidence that affirmatively demonstrates that the nonmoving party has no evidence to support his or her claims. Id.
 {¶ 7} An appellate court's review of summary judgment is de novo.Koos v. Cent. Ohio Cellular, Inc. (1994), 94 Ohio App.3d 579, 588;Bard v. Society Nat. Bank, nka KeyBank (Sept. 10, 1998), Franklin App. No. 97APE11-1497. Thus, we conduct an independent review of the record and stand in the shoes of the trial court. Jones v. Shelly Co. (1995),106 Ohio App.3d 440, 445. As such, we must affirm the trial court's judgment if any of the grounds raised by the movant at the trial court are found to support it, even if the trial court failed to consider those grounds. See Dresher, supra; Coventry Twp. v. Ecker (1995),101 Ohio App.3d 38, 41-42.
 {¶ 8} Jacobs argues that the six-month limitation provision is inapplicable to him because he was not terminated. According to Jacobs, he believed that that provision *Page 4 
"only applied to individuals who were terminated because the language used by [Western Southern] when drafting the `Agreement' indicated that it only applied from the `date of termination.'" (Jacobs' brief at 9.) Thus, Jacobs contends that because the agreement failed to define the term "date of termination," the language is ambiguous, and the ambiguity must be construed in his favor. We do not find Jacobs' argument to be at all persuasive.
 {¶ 9} The construction of written contracts is a matter of law.Alexander v. Buckeye Pipe Line Co. (1978), 53 Ohio St.2d 241, paragraph one of the syllabus. If a contract is clear and unambiguous, its interpretation is a matter of law and there is no issue of fact to be determined. State ex rel. Montgomery v. R.J. Reynolds Tobacco Co.,152 Ohio App.3d 345, 2003-Ohio-1654, at ¶ 37, affirmed, 104 Ohio St.3d 559,2004-Ohio-7102, citing Latina v. Woodpath Dev. Co. (1991),57 Ohio St.3d 212, 214.
 {¶ 10} The mere absence of a definition of a term in a contract does not make the term ambiguous. Id., citing Nationwide Mut. Fire Ins. Co.v. Guman Bros. Farm (1995), 73 Ohio St.3d 107, 108. Words will be given their ordinary meaning in a contract unless manifest absurdity results or some other meaning is clearly evidenced from the face or overall contents of the instrument. Shifrin v. Forest City Ent, Inc. (1992),64 Ohio St.3d 635, 638; Miller v. Marrocco (1986), 28 Ohio St.3d 438, 439. A writing will also be read as a whole, and the intent of each party will be gathered from a consideration of the whole. Foster WheelerEnviresponse, Inc. v. Franklin Cty. Convention Facilities Auth. (1997),78 Ohio St.3d 353, 361.
 {¶ 11} In this case, Jacobs does not contend the six-month limitations provision was unreasonable, or that it contravened a statute or public policy. Rather, Jacobs *Page 5 
asserts that he believed the provision only applied to situations where Western Southern terminated the employee. A review of the agreement discloses, however, that Jacobs' belief is untenable.
 {¶ 12} The six-month limitation provision prohibits an employee from commencing any suit "relating to your employment * * * more than six months after the date of termination of such employment." The agreement employs the pedantic meaning of the word "termination," and the limitation provision seemingly applies to any suit filed six months after cessation of the employer-employee relationship. Indeed, there is no language that restricts the provision's application to circumstances where Western Southern terminates the agreement, and it is significant that the phrase employed is "termination of such employment," and, not "termination of the employee." See, e.g., Sherwood v. Blue Cross (E.D. Cal. 2007), Civil Action No. S-07-633 LKK/DAD ("Arguably, the policy is employing the word `termination' in the literal sense, by which the policy would apply to any claims related to the cessation of the employer-employee relationship, rather than only claims related to the termination of the employee by the employer. After all, the phrase employed is `termination of th[e] relationship,' not `termination of the employee.'").
 {¶ 13} Further, Section VI of the agreement, which addresses termination of employment, provides in pertinent part:
 A. This Agreement may be terminated by you upon one week's prior written notice. * * *
 B. This Agreement may be terminated by Western-Southern without notice for cause. * * * *Page 6 
When this section is read in conjunction with the limitations provision, it is clear that the latter applies, regardless of whether it is the employer or the employee that actually terminates the agreement.Foster Wheeler Enviresponse, Inc., supra. The fact that Jacobs discerned a different meaning from these provisions does not render the same ambiguous. See, e.g., Hagberg v. Cincinnati Ins. Co., Franklin App. No. 06AP-618, 2007-Ohio-2731, at ¶ 13 (rejecting a claim of ambiguity based not on the language of the insurance policy, but on the plaintiff's belief that she was entitled to coverage).
 {¶ 14} With respect to the phrase "date of termination," we note that in Mullins v. Prudential Ins. Co. (1966), 6 Ohio St.2d 148, the court defined "termination of employment" as meaning "a clear and complete severance of the relationship of employer and employee, or, in other words, the end of the status * * * ." Id. at 150, quoting 68 A.L.R.2d 36. And, in State ex rel. Gross v. Indus. Comm., 115 Ohio St.3d 249,2007-Ohio-4916, the court acknowledged that "job terminations" could be either "voluntary" or "involuntary." Id. at ¶ 15. See, also, Gurfel v.SEC (D.C. Cir. 2000), 205 F.3d 400, 402 ("termination could occur for a host of reasons, including voluntary resignation having nothing to do with the person's conduct"); Shipner v. Eastern Air Lines, Inc. (C.A.11, 1989), 868 F.2d 401, 405; Edwards v. New Opportunities, Inc. (D.Conn. 2007), Civil Action No. 3:05CV1238 ("Conduct justifying the termination, or, on the other hand, compelling the resignation, is not itself the actual termination. Termination means the ending, not the conduct which caused the ending") (quotation omitted); Turner v. Anheuser-Busch (Cal. 1994), 7 Cal.4th 1238, 1244 ("Employment relationships are generally terminated by resignation or discharge. An employee voluntarily severs the relationship by resignation; the employer does so by actual discharge"); Black's Law *Page 7 
Dictionary (6Ed.) 1471 (defining "termination of employment" as "a complete severance of relationship of employer and employee"). Thus, an application of the foregoing buttresses our conclusion that the phrase "date of termination," unambiguously means the date upon which the employment relationship between Jacobs and Western Southern ceased to exist.
 {¶ 15} Based on the foregoing, we find the agreement at issue is unambiguous, and the six-month limitations provision has force and effect. And, as Western Southern observably points out, Jacobs' "interpretation of his agreement would lead to a manifestly absurd result — contrary to the plain meaning of the agreement — where the six-month limitation applies when Western-Southern terminates an employment relationship but not when the employee terminates it by resigning." (Western Southern brief at 6.) Consequently, because Jacobs did not commence the instant action within six months of terminating his employment with Western Southern, his suit is untimely filed.
 {¶ 16} Accordingly, Jacobs' single assignment of error is overruled, and the judgment of the Franklin County Court of Common Pleas is hereby affirmed.
Judgment affirmed.
 BRYANT and BROWN, JJ., concur. *Page 1