OPINION *Page 2 
{¶ 1} Plaintiff-Appellant Gary Scott Williamson appeals the August 27, 2007, decision of the Muskingum County Court of Common Pleas granting Defendant-Appellee Western Southern Life Insurance Company's motion for summary judgment.
 STATEMENT OF THE FACTS AND CASE {¶ 2} On June 5, 1989, Appellant Gary Scott Williamson was hired by Appellee Western-Southern as an insurance agent.
 {¶ 3} In December 1991, Williamson was promoted to Sales Manager in that office, and in November 1995, Williamson was demoted to Sales Representative.
 {¶ 4} In October 1997, Williamson transferred to the Coshocton, Ohio, office as a Sales Manager.
 {¶ 5} In May 2001, Williamson was promoted to District Sales Manager in the Charleston, West Virginia, office.
 {¶ 6} In June 2003, Appellant was transferred to the Zanesville office as the District Sales Manager. Appellant's direct supervisor was Gene Patterson. Upon such promotion, Appellant executed a document captioned "District Sales Manager's Agreement" which contained the following provisions:
 {¶ 7} "Section III Legal Proceedings
 {¶ 8} "C. Not to commence any action or suit relating to your employment with Western Southern more than six months after the date of termination of such employment, and to waive any statute of limitation to the contrary. *Page 3 
 {¶ 9} "Section VI Termination
 {¶ 10} "B. This Agreement may be terminated by Western-Southern without notice for cause. "Cause" includes, but is not limited to, the following:"
 {¶ 11} In March, 2005, Appellant was demoted to Sales Representative.
 {¶ 12} Effective May 6, 2005, Williamson voluntarily resigned from Western-Southern.
 {¶ 13} In October, 2005, Williamson filed an action for wrongful termination in the Circuit Court for Kanawha County in West Virginia.
 {¶ 14} On March 2, 2006, the Circuit Court dismissed Williamson's Complaint "in its entirety for lack of venue pursuant to Rule 12(b)(3)." Order, Civil Action No. 05-C-2265 (3/2/2006) because Appellant was a resident of Zanesville, Ohio, at that time.
 {¶ 15} On May 18, 2007, Williamson commenced an action in the Muskingum County Court of Common Pleas.
 {¶ 16} On August 23, 2007, the Court granted Appellee Western-Southern's motion to dismiss, or in the alternative, for summary judgment.
 {¶ 17} Plaintiff-Appellant now appeals this decision, assigning the following error for review:
 ASSIGNMENT OF ERROR {¶ 18} "I. THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT GRANTED DEFENDANT'S MOTION FOR SUMMARY JUDGMENT."
 I. {¶ 19} In his sole assignment of error, Appellant argues that the trial court erred in granting summary judgment in favor of Appellee. We disagree. *Page 4 
 {¶ 20} Civ. R. 56(C) states in pertinent part:
 {¶ 21} "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages."
 {¶ 22} A trial court should not enter a summary judgment if it appears a material fact is genuinely disputed, nor if, construing the allegations most favorably towards the non-moving party, reasonable minds could draw different conclusions from the undisputed facts,Houndshell v. American States Insurance Company (1981),67 Ohio St.2d 427. The court may not resolve ambiguities in the evidence presented,Inland Refuse Transfer Company v. Browning-Ferris Industries of Ohio,Inc. (1984), 15 Ohio St.3d 321. A fact is material if it affects the outcome of the case under the applicable substantive law, Russell v.Interim Personnel, Inc. (1999), 135 Ohio App.3d 301.
 {¶ 23} When reviewing a trial court's decision to grant summary judgment, an appellate court applies the same standard used by the trial court, Smiddy v. The *Page 5 Wedding Party, Inc. (1987), 30 Ohio St.3d 35. This means we review the matter de novo, Doe v. Shaffer, 90 Ohio St.3d 388, 2000-Ohio-186.
 {¶ 24} The party moving for summary judgment bears the initial burden of informing the trial court of the basis of the motion and identifying the portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the non-moving party's claim,Drescher v. Burt (1996), 75 Ohio St.3d 280. Once the moving party meets its initial burden, the burden shifts to the non-moving party to set forth specific facts demonstrating a genuine issue of material fact does exist, Id. The non-moving party may not rest upon the allegations and denials in the pleadings, but instead must submit some evidentiary material showing a genuine dispute over material facts, Henkle v.Henkle (1991), 75 Ohio App.3d 732.
 {¶ 25} In the case sub judice, Appellant signed an employment contract which stated that he agreed "not to commence any action or suit relating to your employment with Western Southern more than six months after the date of termination of such employment, and to waive any statute of limitation to the contrary."
 {¶ 26} Appellant argues that the six-month limitation provision is inapplicable to him because he was not "terminated". Appellant argues that he believed that the six-month provision only applied to employees who were terminated by Western Southern. Appellant further argues that the agreement failed to define the term "date of termination," and that therefore the language is ambiguous, and the ambiguity must be construed in his favor.
 {¶ 27} The construction of written contracts is a matter of law.Alexander v. Buckeye Pipe Line Co. (1978), 53 Ohio St.2d 241, paragraph one of the syllabus. If a *Page 6 
contract is clear and unambiguous, its interpretation is a matter of law and there is no issue of fact to be determined. State ex rel.Montgomery v. R.J. Reynolds Tobacco Co., 152 Ohio App.3d 345,2003-Ohio-1654, at ¶ 37, affirmed, 104 Ohio St.3d 559, 2004-Ohio7102, citing Latina v. Woodpath Dev. Co. (1991), 57 Ohio St.3d 212, 214.
 {¶ 28} The mere absence of a definition of a term in a contract does not make the term ambiguous. Id., citing Nationwide Mut. Fire Ins. Co.v. Guman Bros. Farm (1995), 73 Ohio St.3d 107, 108. Words will be given their ordinary meaning in a contract unless manifest absurdity results or some other meaning is clearly evidenced from the face or overall contents of the instrument. Shifrin v. Forest City Ent., Inc. (1992),64 Ohio St.3d 635, 638; Miller v. Marrocco (1986), 28 Ohio St.3d 438, 439. A writing will also be read as a whole, and the intent of each party will be gathered from a consideration of the whole. Foster WheelerEnviresponse, Inc. v. Franklin Cty. Convention Facilities Auth. (1997),78 Ohio St.3d 353, 361.
 {¶ 29} Upon review, we find that this exact issue was considered by the Tenth District Court of Appeals in Jacobs v. W. S. Life InsuranceCo. (Franklin App. No. 71-AP994), 2008-Ohio-3298, wherein the trial court reviewed identical contract language, therein holding:
 {¶ 30} "A review of the agreement discloses, however, that Jacobs' belief is untenable.
 {¶ 31} "The six-month limitation provision prohibits an employee from commencing any suit "relating to your employment * * * more than six months after the date of termination of such employment." The agreement employs the pedantic meaning of the word "termination," and the limitation provision seemingly applies to any *Page 7 
suit filed six months after cessation of the employer-employee relationship. Indeed, there is no language that restricts the provision's application to circumstances where Western Southern terminates the agreement, and it is significant that the phrase employed is "termination of such employment," and, not "termination of the employee." See, e.g., Sherwood v. Blue Cross (E.D.Cal. 2007), Civil Action No. S-07-633 LKK/DAD ("Arguably, the policy is employing the word `termination' in the literal sense, by which the policy would apply to any claims related to the cessation of the employer-employee relationship, rather than only claims related to the termination of the employee by the employer. After all, the phrase employed is `termination of th[e] relationship,' not `termination of the employee.'").
 {¶ 32} "Further, Section VI of the agreement, which addresses termination of employment, provides in pertinent part:
 {¶ 33} "A. This Agreement may be terminated by you upon one week's prior written notice. * * *
 {¶ 34} "B. This Agreement may be terminated by Western-Southern without notice for cause. * * *
 {¶ 35} "When this section is read in conjunction with the limitations provision, it is clear that the latter applies, regardless of whether it is the employer or the employee that actually terminates the agreement.Foster Wheeler Enviresponse, Inc., supra. The fact that Jacobs discerned a different meaning from these provisions does not render the same ambiguous. See, e.g., Hagberg v. Cincinnati Ins. Co., Franklin App. No. 06AP-618, 2007-Ohio-2731, at ¶ 13 (rejecting a claim of ambiguity based not on the *Page 8 
language of the insurance policy, but on the plaintiff's belief that she was entitled to coverage).
 {¶ 36} "With respect to the phrase "date of termination," we note that in Mullins v. Prudential Ins. Co. (1966), 6 Ohio St .2d 148, the court defined "termination of employment" as meaning "a clear and complete severance of the relationship of employer and employee, or, in other words, the end of the status * * *." Id. at 150, quoting 68 A.L.R.2d 36. And, in State ex rel. Gross v. Indus. Comm., 115 Ohio St.3d 249,2007-Ohio-4916, the court acknowledged that "job terminations" could be either "voluntary" or "involuntary." Id. at ¶ 15. See, also, Gurfel v.SEC (D.C. Cir. 2000), 205 F.3d 400, 402 ("termination could occur for a host of reasons, including voluntary resignation having nothing to do with the person's conduct"); Shipner v. Eastern Air Lines, Inc. (C.A.11, 1989), 868 F.2d 401, 405; Edwards v. New Opportunities, Inc.
(D.Conn. 2007), Civil Action No. 3:05CV1238 ("Conduct justifying the termination, or, on the other hand, compelling the resignation, is not itself the actual termination. Termination means the ending, not the conduct which caused the ending") (quotation omitted); Turner v.Anheuser-Busch (Cal. 1994), 7 Cal.4th 1238, 1244 ("Employment relationships are generally terminated by resignation or discharge. An employee voluntarily severs the relationship by resignation; the employer does so by actual discharge"); Black's Law Dictionary (6Ed.) 1471 (defining "termination of employment" as "a complete severance of relationship of employer and employee"). Thus, an application of the foregoing buttresses our conclusion that the phrase "date of termination," unambiguously means the date upon which the employment relationship between Jacobs and Western Southern ceased to exist. *Page 9 
 {¶ 37} Based on the foregoing, we find the agreement at issue is unambiguous, and the six-month limitations provision has force and effect. And, as Western Southern observably points out, Jacobs' "interpretation of his agreement would lead to a manifestly absurd result-contrary to the plain meaning of the agreement-where the six-month limitation applies when Western-Southern terminates an employment relationship but not when the employee terminates it by resigning." (citations omitted). Consequently, because Jacobs did not commence the instant action within six months of terminating his employment with Western Southern, his suit is untimely filed."
 {¶ 38} We agree with this reasoning of the Tenth District inJacobs, supra and adopt the above holding. We find that the contract language in the instant case was not unambiguous, and that Appellant was required to commence any employment-related legal action within six months, which he failed to do. We therefore find the trial court did not err in entering summary judgment on behalf of Appellee.
 {¶ 39} In the alternative, Appellant argues that he did meet the six-month filing requirement by commencing an action in the Circuit Court in West Virginia in October, 2005. We find said argument to be unpersuasive.
 {¶ 40} RC. § 2305.17 provides:
 {¶ 41} An action is commenced within the meaning of sections 2305.03
to 2305.22 and sections 1302.98 and 1304.35 of the Revised Code by filing a petition in the office of the clerk of the proper court
together with a praecipe demanding that summons issue or an affidavit for service by publication, if service is obtained within one year. (emphasis added). *Page 10 
 {¶ 42} As the West Virginia Circuit Court lacked jurisdiction, it was not the "proper court" and therefore said action was not "commenced" at that time.
 {¶ 43} Furthermore, Appellant failed to file the instant action until May, 2007, some fourteen months after the Complaint was dismissed by the West Virginia Circuit Court.
 {¶ 44} Accordingly, Appellant's single assignment of error is without merit and is overruled.
 {¶ 45} For the foregoing reasons, the judgment of the Court of Common Pleas of Muskingum County, Ohio, is hereby affirmed.
 Wise, J. Delaney, J., Hoffman, P. J., concurs separately. *Page 11